Again, I just want to note that we're very honored to have with us today the Honorable James Holderman. Judge Holderman is a visiting judge and he's helping us out in his normal role. He's the Chief Judge of the U.S. District Court for the Northern District of Illinois. We're very happy to have him with us today. We have four cases, I'm sorry, five cases on the calendar today. Two of them are being submitted on the briefs. I will just note for the record the two submitted cases. The first one is number 07-7076, Williams v. Department of Veterans Affairs. And the second one is number 07-3084, Quiazon v. Office of Personnel Management. Again, those two cases are being submitted on the briefs. The first case in which we will hear oral argument this morning is number 06-1471, Boynton v. Headwaters. Mr. Green? Yes, Your Honor. Thank you. Okay, I just want to confirm you've reserved five minutes for your rebuttal, is that correct? That is correct. Okay, and you know how our lighting system works? I think so. All right, well you can start whenever you're ready. May it please the Court, I'm Jeff Green of the National Bar and I'm here representing the plaintiffs and appellants in this case. I want to start off by making an observation of something that is totally clear, or at least should be, and that is that Headwaters, the defendant in this case, intentionally participated in a series of transactions in 1998 knowing that the other contracted party, Mr. Davidson, who was a co-defendant until we settled with him, knowing that he was defrauding the plaintiffs, and they entered into this transaction based on Now how do you say Headwaters knew that he was defrauding the plaintiffs? What's your basis for that? The evidentiary support? The investigation that Headwaters did prior to entering into the transactions, which are in the record, excuse me, I have a little eyesight problem here. In the appendix at pages 3335 through 3339 are two memos that were prepared by Headwaters in advance of the transactions that observed that the companies had been dissolved and suggested that the possibility was that Mr. Davidson had used those companies to raise money from my clients and then was intentionally allowing them to be dissolved. Pulling the plug was the phrase used by them. The exact language in one of the memos on page 3339 is he is putting an asset into a company and raising money, then pulling the plug. So Headwaters knows that Davidson is engaging in this type of conduct, and then Headwaters enters into these contracts with this knowledge that Mr. Davidson has allowed these companies to be dissolved after raising money through them based on documents that are completely fraudulent. With the benefit of the hindsight that we have today, knowing that Headwaters admits that they knew about the dissolution and they believe that they were involved in a transaction with Mr. Davidson individually, if you look at the documents that they drew up, they don't match the transaction at all. This is not a case where Headwaters came into court and said, oh my God, we had no idea. We thought we were dealing with a legitimate corporation, Antec, of Illinois. We have since discovered that it had been dissolved. We didn't know that. Oh my God, here's a mess. Let's sort this out. What Headwaters did was knowing about the dissolution and Mr. Davidson's conduct, they entered into these contracts which are in the record that falsely create a paper trail that matches the records in the U.S. Patent and Trademark Office but do not match the transaction that Headwaters today says it was entering into. Today, Headwaters says that it knew that Antec, of Illinois, was no longer a corporation and could not have been at the time of the transactions. And this was the corporation that had gone out of existence for failure to maintain its filings. Right. And yet they draft the agreements, and if you look at just one of the agreements that was drafted by counsel for Headwaters, who was trial counsel in this case, this is in the appendix at page 479. It's a patent purchase agreement from the dissolved corporation to Mr. Davidson. So now Headwaters counsel, because Mr. Davidson was unrepresented, Headwaters counsel drafted an agreement between a corporation that it knew to be dissolved and the individual that it suspected that its research had shown was pulling the plug after raising money. But sir, Mr. Green, wasn't that the entity that was named as the S&E in the patent? It was, but it was not the S&E according to Headwaters' investigation. Headwaters says that that assignment was void. Now, we say that that assignment actually resulted in a transfer to an unincorporated association of which my clients are members. Headwaters also knew about the second incorporation. So they drafted these documents in the name of an existing corporation, the second one, the 1998 corporation. But the recitals in the documents say that it is not a dissolved corporation or an unincorporated association. They say it is an illegal corporation that was the S&E, and then it transfers money. Go ahead, please. Well, the question I have, couldn't the dissolved corporation have been resurrected after the patent issue and make the assignment a correct assignment? It could have been, but it was not. And Headwaters admits that its research showed that it was incapable of being revived. Under Illinois law, which I'm sure Ron knows a great deal more about than I do. After 1996, after that five-year period had run. After that five-year period had run, it was not revived before that. Headwaters looked at the Secretary of State's records, concluded it could not be revived, and this was a 1998 transaction that Headwaters drafted these documents for. Significantly, we're not here today because the district court below ruled against us on this issue. We're not here because the district court ruled that there was insufficient evidence in the record to support a going to trial on fraud against Mr. Davidson or civil conspiracy against Headwaters. In fact, the court ruled the opposite. The court ruled in our favor on those issues and said, yes, there is evidence that Headwaters knew the rights of these plaintiffs and there is sufficient evidence to carry the civil conspiracy to trial. We're here today because the district court dismissed the civil conspiracy claim as a result of the settlement agreement. What the plaintiffs did was they... Before you get into the merits of the civil conspiracy, let me have you address, if you would, for a moment, the patent infringement claim. Your submission, I take it, at this point, is that the owners of the patent are the former shareholders of EdTechOne, if we can call it that, the dissolved corporation. Is that correct? That is the... Well, to be quite honest, I'm not aware of it, but what is your view as to who owns the patent? That is my view. However, it is possible that the court could rule against us on that. And with respect, that leaves me with the possibility of pleading in the alternative that the patent... There are two possibilities. One is that the assignment was effective. It just didn't pass title to the corporation. It passed title to an unincorporated association. That's a possibility. That's your theory, right? That's your submission to this court. That's my theory. But Headwaters claims it was just not effective at all to pass title to anyone. There's another possibility, which is that it was effective to pass title to Mr. Davidson individually, DBA. Okay. Let's assume your theory is correct. I mean, that's your submission. Not all the shareholders are before us, right? So therefore, under your theory, not all of the owners of the patent are a certain infringement. That is technically correct, but only because the decision of the court below came before... You said that they should have certified a class, but it seems to me that when we're talking about multiple owners of a patent, it's your obligation to bring all of those multiple owners of the patent before the court and not to do so by certification of a class. I mean, it isn't clear to me what authority there is for saying that a class action device can be used to establish patent standing in this setting. Do you have any authority for that? The only authority I have for that is – and remember, this is a special type of class action on behalf of an unincorporated association. The federal rules, I believe, 23.1, has a special provision for unincorporated associations, and that's the appropriate thing. If we have an unincorporated association, then the correct thing to do is to have the unincorporated association brought into court, and it can be done through a certification process. But that isn't what the theory of ownership is, as I understand it. The theory of ownership is not that an association owns it. The theory of ownership, if I understand it correctly, is that each and every one of the former shareholders, in fact, is a partial owner. Isn't that correct? I would disagree. Our theory is that it was owned by an unincorporated association named Ad Tech Inc. of Illinois. If that's true, then how would that association express its desire to sue? By a unanimous vote of all former shareholders? By a majority vote or what? Through the representation of appropriate persons who are members, who qualify through the certification process with the district court. Let me get to the crux of it. Suppose that all of the members of this association, that is to say, I take it all of the former shareholders, met in a room and voted 60 to 40 in favor of suing. Would that give standing to bring a suit in the name of the unincorporated association under the standing rules about patent infringement? I would assert that it would. And do you have any support for that? No, just the fact that if an unincorporated association can own property in the name of the unincorporated association, it needs to be able to act as an association as opposed to a bunch of... I mean, you understand if there are 13 inventors listed on a patent, you could call it an association, but every single one of them needs to agree to the lawsuit. And each and every one of them, as part owners of that patent, can object to the bringing of a lawsuit or, for that matter, license the patent. And I can only tell the court that we tried to solve this problem by filing as a class action, both with a regular class action and, alternatively, an unincorporated association. OK. So, conspiracy, this is not your principle. Right. And as Your Honor correctly notes, our principle argument is with respect to the dismissal of the civil conspiracy claim, and it was dismissed because of the settlement agreement. And with the greatest respect to the court below, I believe the court just got confused about the rules having to do with civil conspiracy and partial settlements. It is clear that civil conspiracy is not a derivative source of liability. It is not a master-servant, respondeat superior type of liability. It is joint and several liability. And for many years, the law has been that in those circumstances, you can settle with a release and dismiss claims against one joint court feature without releasing the others. And that's what we did in this case. Now, the argument that the defendant, Headwaters, makes is based solely on cases and logic that require this court to find that a civil conspiracy cause of action is a type of respondeat superior liability, which it just is not. And none of the cases that they cite in their brief hold that. And all of the cases that have to do with a release of one defendant automatically releasing another are all in the respondeat superior situation. There are no cases out there other than those. And in fact, there are a lot of cases saying exactly the opposite, including U.S. Supreme Court cases, some of which we cited in the brief. Does the Tennessee law, in the respondeat superior line of cases, provide a mechanism for avoiding the consequences of dismissal of one in the document that settles with the other? Yes. So you can just say, without register proceeding against the finance director. Right. And that was done in this case. The order on which they rely for their arguments has language in it. And that's true even in the respondeat superior. I understand. Oh, no, no. OK. No, no. In the respondeat superior, you can't avoid the consequences of it. You can't release one releases all. If the company's truck driver is released, even if you try to reserve rights against the company, then the company is released. OK. But you're saying that the liability, the focus of liability is the truck driver. Right. The truck driver, it's his or her acts that create the liability. Right. Even if you provide in the document releasing the truck driver that we continue to think the truck driver is fully liable, fully culpable, but we simply don't want to pursue this action against the truck driver. That is exactly right. And Headwater cited one case that has that exact point in it where a court, and I can't recall the name off the top of my head, but the court says you try to reserve your rights, but because this is solely derivative, it doesn't work. Now, of course, civil conspiracy liability is joint and separate. The conspirators are liable because they themselves engaged in actions. It's unlike the owner who didn't do anything. The truck driver, it's the truck driver's actions that they're reputed to have. Now, of course, if the owner was negligent in hiring the truck driver. You used up your rebuttal. I'm sorry. You're into your overtime, I would say.  You've had a number of questions from the panel. So what I'll do is we'll restore your full five minutes of your rebuttal. Thank you very much. We'll get from Headwater's now. Mr. Marmor. Thank you, Your Honor. Good morning. It's a pleasure to be here. I was wondering if you could, sorry to jump on you before you had a chance to get a word out of your mouth there, but if you could address the matter that the panel was discussing with Mr. Green just before he sat down about the civil conspiracy. Because I will confess that, for my part, and I don't want to speak for myself, I'm having a little bit of a problem seeing the connect between the master-servant respondeat superior line of cases in law, on the one hand, and civil conspiracy on the other. I'd love to address that, Your Honor. Actually, the cases that were cited in the brief on respondeat superior or in principle an agent are analogous to the law that were cited from the state of Tennessee on civil conspiracy. In the state of Tennessee, in the Tennessee Publishing v. Fitzhugh case, they said very clearly that in order for conspiracy to be a state of claim, that there must be an underlying actionable claim. And the great case to illustrate this is the Green v. Brown-Williamson case. That was a tobacco case. The plaintiff in that case was a widow, and she sued the tobacco companies. And there were claims in that case for negligence, strict liability, and conspiracy. And those claims spanned a long period of time, about 15 or 20 years. And Judge McCalla, in that opinion, said, well, there is a period of time where those claims are barred by the statute of repose. They had a 10-year statute of repose in Tennessee that said that 10 years after the purchase date of cigarettes, you couldn't bring any more claims. So for that period of time, when the statute of repose barred the claims, he said there was no underlying actionable claim. And therefore, he said that civil conspiracy for that period of time was dismissed. Interestingly, for the period of time after the statute of repose, it wasn't barred by the statute of repose, he allowed civil conspiracy. So the question is not whether the acts underlying this claim were somehow wrongful or heinous or something, because the acts on the part of the tobacco companies were the same. The question is whether those acts gave rise to an actionable claim. The other case we sat in on, brief, that's right on. Let me make sure I understand. Under Tennessee, as I understand the Tennessee law, an actionable civil conspiracy is where two or more people get together, and each with the knowledge of the other's intent to accomplish an improper purpose, and there's the resulting damages to the claim. It's more than that, Your Honor. Somewhere in there, one of those people has to commit an actionable tort. Okay. It's not like federal criminal conspiracy, where you can just have an agreement and an act in furtherance agreement that may or may not be unlawful in itself. That, in fact, is the major difference between civil and criminal conspiracy. Now, this other case... The term actionable, though, here's where I think we run into the issue in this case. Conduct can be actionable in the sense that the particular acts would give rise to a tort or even a crime. But the particular individual, one particular individual who might be sued for that actionable tort might, for one reason or another, have an immunity from the action. And those strike me as two different things. In other words, to take the example of federal criminal conspiracy, it happens every day in every United States District Court that you have a conspiracy charge in which one of the two conspirators has been released by virtue of agreeing to cooperate and testifying against the other. Nonetheless, there's an actionable conspiracy in that setting as long as you have two people who were parties to the conspiracy and one of them is still before the court. That's certainly true, and I believe I heard the court correctly, in a criminal situation. In a civil situation, there's this case in Tennessee called Levy v. Franks that's cited in our brief that illustrates this principle very nicely. In Levy v. Franks, there were a couple of neighbors. It was almost like the Hatfields and the McCoys. They were having this feud between them. And all sorts of horrible things were happening. They were shooting at each other. And one party brought an action against the other and said, you have maliciously harassed me. And the father was doing malicious harassment. And there was a claim asserted against the whole family for a civil conspiracy. They went to trial. It was a bench trial. And at the time of the close of evidence for the plaintiff, there was a motion for JMOL on the malicious harassment claim, which was the underlying actionable court to support the conspiracy. The trial court dismissed the malicious harassment claim, and therefore there was no longer an actionable tort. The case went on through the rest of the trial, and the trial court allowed the civil conspiracy claim to stand and go through trial. On appeal, the Court of Appeals in Tennessee said, no, that's wrong. Once that JMOL was granted, the underlying tort was no longer actionable, and therefore there was no claim for conspiracy. So the conspiracy claim should have been dismissed. And correct me if I'm wrong, Mr. Long, but that was a determination that the tort had not occurred, correct? That was an adjudication on the merits of the tort. Here, though, don't you have? I'm sorry to sort of cut you off, but time is fleeting. But here, don't you have a situation where, even though Mr. Davidson was dismissed from the case pursuant to the settlement claim, the conduct that he committed, or the actions in which he engaged, are still properly the subject of adjudication? No, they're not. Because the only person against who those claims can be asserted is Mr. Davidson, and he's out. For instance, in the earlier case that I cited before, the Green v. Brown v. Williamson, that was not an adjudication on the merits. That was by the statute of repose. Whatever causes the claim to be no longer actionable doesn't really matter. If it's not actionable, there is no claim for civil conspiracy. And you would say the same thing if, for example, Mr. Davidson had, in the settlement papers, admitted culpability to the very acts that is subject of a civil conspiracy. If the claim is dismissed, it's no longer actionable. In my view, that's correct, Your Honor. Now, if we could move just a little bit. Sure. One opposing counsel had said that it was actually Headwaters that created false documents, documents that did not accurately reflect the transaction and Headwaters' knowledge of the transaction. Could you address that? Because that's no longer Mr. Davidson's conduct. That's Headwaters' conduct. I'd be happy to address that, Your Honor. There are a couple of things that the plaintiffs argue that they say were actionable on the part of Headwaters. The first is this so-called preparation of fraudulent documents. There was a claim against Headwaters in this very case for fraud. That claim was dismissed. It has not been appealed. There is no claim against Headwaters for fraud. On the merits, it was dismissed. They also say that we filed misleading documents with the PTO. That's not actionable. There is no statute. There is no common law. It's just not there. The other things they say that we did were to collect royalties from Carbon Tech, for example. That's not actionable. In fact, the best evidence that none of these things are actionable is the fact that they're not in the complaint. None of these claims have been asserted against Headwaters. They're not actionable. And with no actionable underlying claim, there is no conspiracy. I'd like to address the Zenith case if I might, the Supreme Court case that Mr. Green mentioned. That case is entirely different because in Hazeltine, Zenith versus Hazeltine, there was a patent pooling arrangement. That was the basis of the antitrust law. And the party who was asserting the release, Hazeltine, had its own actionable conduct. It joined the pool. It had its own patents that it used as part of that. Headwaters has no actionable claims against it. All the claims against Headwaters have been dismissed, every single one of them. So Zenith versus Hazeltine is a completely different kettle of fish. In fact, not all civil conspiracy is vicarious liability, but this one is. And the reason it is is because there is no separate tort claim against Headwaters. I'm sorry, you said there was no what? No separate torts against Headwaters. Well, there were originally, but they're all gone now. The trial court dismissed them all. It's important to note that we are not saying that the release of Mr. Davidson released Headwaters. That's not our theory at all. It's the absence of an underlying actionable tort that caused the failure of this claims of conspiracy against Headwaters. I guess what you're saying is you would put emphasis on the word actionable. That's correct. You're saying that even if there was some point of tort, it's no longer in play because of the, at least in part, because of the Davidson dismissal. That's correct. Suppose that Davidson died before the action was brought. Okay. And the conspiracy action was nonetheless brought on the theory that Davidson had conspired, but he died three weeks before trial. Does that require a dismissal of the conspiracy? My belief, Your Honor, is that it could be asserted against his estate, so it would still be actionable. Now, if I might move on, Your Honors, to the issue of the patent infringement, Judge Bryson raised this question of standing and ownership. Clearly, these claims, in order to assert infringement, you have to have ownership. They clearly don't have ownership. This July 29, 1901 assignment was to Ad Tech, Inc. of Illinois. Judge Todd wrote below that that did not create any rights in Ad Tech I or in its shareholders. That's very clear. That has never been appealed. And so their theory is that it sort of ricocheted and went off somewhere else to them, to this unincorporated association. There are several problems with that. One is that, under Tennessee law, an assignment that is ineffective for lack of a grantee or an ambiguous grantee is inoperative and void. That's the Weill v. Robertson case. Judge Todd, in this case, held that assignment was of no effect. Again, it didn't go anywhere. It stayed with Davidson. If an assignment fails, it stays with the Asset North. The plaintiffs in this case, Philip Boynton, the lead plaintiff, testified at pages 52-24 and 52-25 of the record that there was no assignment to him, there was no assignment to the other plaintiffs, no assignment to the unincorporated association, and no assignment from that unincorporated association to the plaintiffs. They didn't have title. They can't assert patent infringement. And in any event, they didn't assert patent infringement. There's no allegation that there was any making, using, or selling of what's in the patent. So the trial court properly dismissed that claim. Let's assume for the moment that Mr. Green is correct in his assertion that the unincorporated association is the patent owner here or that the members of the unincorporated association are the owners. Do you think that if that's so, that the class action device is sufficient to overcome? I mean, I understand that there wasn't a class certified in this case. But if that device, is that device usable to overcome standing problems in a patent setting? Walk me through that analysis, if you will. Absolutely not. The Ethicon versus U.S. Surgical case makes it very clear that all the owners of the patent must join. And if anyone of them refuses to join for a good reason, a bad reason, or no reason, you can't proceed. Well, I guess the question then is, can the owner be this association which speaks presumably through a majority of its members? I mean, I take it that that's Mr. Green's theory. Rather than being an association being simply all of the members of the association, all of whom you must affirmatively assert agreement to the infringement action. Yeah, but Mr. Green's client's theory in this case has been not that the association owns it separately from the members, as you would have in a partnership situation, but that they each own it individually. Well, his argument this morning, as I understood it, was it the association, not the individual members. And I may have misunderstood it. Well, and the problem with that is the association is not a party. That's different from the class unification problem, because if the association is a separate entity, like a partnership or a corporation, they could have joined as an entity. They didn't. It's never been a party in this case. So, no, I don't think that solves the standing problem. And we do have less than all of the shareholders. Oh, yeah, there's 80 or 100 shareholders. And, by the way, the district court, Judge Todd, held that those shareholders, like Act Act 1, have no rights in the pact. That clause, shareholders, they have no rights. Now, Let me ask you one other question while I'm not letting this issue go. Please. If you're right about the standing issue that cuts the patent argument off right at the outset, did you argue to the district court that this case should not be in federal district court? Or were you happy to have the state law issues adjudicated by the district court? We argued to the district court that they had not properly pleaded a patent claim. Right. And the district court agreed with us and forced them to re-plead in diversity. I don't know that we said that there was no subject matter jurisdiction. We said that it's not properly pleaded. So, with all of these shareholders, there's still complete diversity? Well, no, there isn't. This is the problem. You see where I'm going with this. Why are we in federal court? In fact, It's state law claims. I see that my time has expired if I can just answer your question. We'll extend your time to the extent that we also extend Mr. Queen's time. Thank you very much. This is a very interesting question because right before the trial was supposed to occur in late 2005, we filed a motion to dismiss the failure to join necessary parties. These shareholders, these other so-called owners of the patent. One of those shareholders was Mrs. Davidson. Mr. Davidson's former wife. And if she were joined as a plaintiff, it would destroy diversity because she lived in the same state as Mr. Davidson. And then right after that, they dismissed Mr. Davidson. So it's not coincidental. And it wouldn't destroy diversity if they'd all been joined individually because of Mrs. Davidson. To answer your question. So, well, now I'm just not, you know, I'm a little unclear as to whether the jurisdiction of the district court is predicated entirely on 1338, the patent statute, or it is also predicated on diversity. Initially, it was predicated on 1338. He dismissed the patent claim. Then they filed on diversity, but they didn't. They dismissed Mrs. Davidson, which would have destroyed it. Okay, I understand. Okay. Now, if I could move to the constructive trust issue. The first problem we have with constructive trust is that the plaintiffs have waived their rights and their claims, arguments related to constructive trust. In the court below, we move for summary judgment, saying that in order, that constructive trust is a remedy, not a right. And if you don't have any substantive rights left, you can't impose a remedy for violation of no rights. Let me ask you this, Mr. Horvath. If one were to disagree with you on the civil conspiracy claim, wouldn't necessarily then the constructive trust claim still be alive? No, it wouldn't, Your Honor. I'm glad you asked that question. One of the things you have to have in a constructive trust is that the claimants to the constructive trust must have some rights in the subject matter of the trust, in the rest of the trust. And the rest of the trust, according to the plaintiffs, is this patent. Well, where did they get those rights? They don't have any. This assignment didn't transfer any rights. It was void and inoperative, or as Judge Todd said, it was of no effect. They have not elucidated or advanced any other argument as to why they have rights. They talk a lot about fraud, but fraud doesn't create rights. Fraud takes away rights. It destroys rights. How did they get rights in this patent? Under the Illinois statute, the survival statute, after five years, all of the claims of the shareholders of the corporation are dead, and they're unreviable. You can't revive them. So in 1996, whatever rights they had as shareholders were cut off. There is no theory that they have advanced or can advance that gives them rights in this patent, none at all. And without those rights, the constructive trust claim must also fail because you can't defraud somebody out of a patent in which they have no rights. Briefly, I'd like to touch on this contract issue. The court below dismissed that claim because there was, in response to a motion for summary judgment, there was not an affidavit. There was not a declaration. There was nothing to suggest there was a contract. We deposed the plaintiffs and asked them if they had contracts with Adozy. They all said no. And so we filed our motion. In response, Mr. Green didn't file any affidavits. Instead, he just said that he believed that there was a contract between the group and Mr. Davidson. That's not evidence. On summary judgments, you have an obligation to marshal facts and evidence. Now they say, and the district court, in his order, found exactly that, that they failed to offer any evidence to suggest that the plaintiffs and Davidson acquiesced to an agreement or agreed to any reasonably certain terms capable of enforcing it. On appeal, they come up with a new argument saying that because Davidson was aware of the dissolution and it was, the first affidavit was dissolved, they were working on developing the commercialization, and he continued to operate the business, that created a contract. Well, who has what obligations under that contract? That's not sufficiently definite to be enforceable. And there was no evidence of that in any event because they didn't put any evidence in. Last, they assert this argument about a claim for interference with business relations. That claim was not pleaded below. It was not argued below. It's a completely different claim. You can't arrange a complaint on appeal. That claim has been waived. I thank you for your patience, Your Honor. Thank you, Mr. Lorimer. You have, as I indicated, you have your full five minutes of your rebuttal. Thank you, Your Honor. But I'm going to, I guess, do the same thing I did to Mr. Lorimer when we got up. What is your response to his argument on the constructive trust issue? Now, assume for the moment that we were to, one were to look at this case and say, we're going to affirm the district court with respect to the patent claim, with respect to the interference with business relationship claim, but that we disagree with the district court on the civil conspiracy claim. And that was basically the question I posed to Mr. Lorimer with respect to constructive trust. I said, assume for the moment we disagree with you, meaning Mr. Lorimer, on the civil conspiracy claim. Doesn't that necessarily keep the constructive trust issue alive? And he said no. You heard him say no because there would be nothing that could be the subject of constructive trust that the plaintiffs would have a right to. What is your answer to that? I disagree. Again, this is all you've got to learn about your civil conspiracy claim. Right. The constructive trust is a cause of action, an independent cause of action. It's not simply a remedy that you have to tack on to some of the court. The elements of it are set forth in the briefs and in the cases. In this case, following down the line that Mr. Lorimer was going, if the assignment is completely void, Mr. Davidson then holds the patent, arguably, as a trustee for his investors, these people. The court can impose a constructive trust. How does the assignment get to be void? Well, Mr. Lorimer just argued that it did. The assignment of the right. Correct me if I'm wrong, Mr. Newman. I understood Mr. Lorimer to be saying, the problem here is that the subject, to have a constructive trust, you have to have something be the subject of the trust. It has to be the race, and it's the patent. No, no. I think that's what he said. Right. And he said your plaintiffs don't have any right to the patent. Without regard to that, they would still have rights under the constructive trust theory to the proceeds, to the royalties from carpeting. Because Headwaters took those royalties with notice, and because they were engaged in papering the fraudulent transaction, a court of equity could impose a constructive trust on the royalty stream, even if it said, you know, it's just too complicated, and you're not going to get the rights to the patent, but these millions of dollars that have been collected that Mr. Davidson should have been distributing to you, which he was not because he intentionally pulled the plug on the corporation, we're going to impose a trust on those in Mr. Davidson's hands, and because Headwaters took with knowledge, took that income stream with knowledge, that trust is going to be imposed on those royalties in their hands, in which case we are entitled to relief on the royalty stream, separate and apart from ownership of the patent, which would be different issues. This is, the argument that Headwaters is making on the constructive trust that it is a remedy and not a right, misapprehends the law of constructive trust. It is true that you don't have a constructive trust until you have a judicial determination, but that doesn't mean, as Mr. Warner would want you to say, that you have to have a judicial determination on a different tort. It means you don't have a constructive trust, you don't have a right in the proceeds until the court gives it to you as a constructive trust. And the cases that they cite come up in the bankruptcy context, it's important for determining whether or not those proceeds that might be imposed with a constructive trust are part of the bankruptcy estate. And it makes sense to say, well, unlike some things,  until the court gives you a determination, but the court can give you a determination on a stand-alone basis. You can sue for nothing but constructive trust and the elements are set out in the cases. There are four situations under Tennessee law where it can be imposed, where a person procures legal title in violation of the duty to a true owner, where it's obtained by inequitable means, abuse of a confidential relationship, or where you acquire property but notice that another is entitled to benefits. Now, at least two of those apply to Headwaters in this case. That's all we need to establish a constructive trust. We don't need civil conspiracy or conversion or negligence or any other cause of action. We need to prove one of these and the court below held that we satisfy the requirements for going to trial on a constructive trust theory in order, and we did not waive this in their subsequent motion for summary judgment because we were entitled to rely on the court's earlier rulings that we had passed the summary judgment test and set forth a case for the imposition of a constructive trust. The court then later got confused and said, well, if the civil conspiracy claim goes away then there's nothing for the constructive trust to be a remedy for but that's not the way it works. We passed muster on the imposition of the constructive trust and that should have gone forward. The interference with contract claim, I just respectfully disagree with Mr. Lord that it was not pleaded. It was pleaded. The second amendment complaint, which is the operative one, says that Mr. Davidson had both contractual and quasi-contractual obligations to my clients and it goes on to say that Headwaters interfered with those obligations and those obligations were both contractual and quasi-contractual and you can interfere with contracts that are implied in fact. I see the red light, so I think you're finished. Thank you.